**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **NILDA RIVERA-CRUZ,**<br>    **Plaintiff,**<br><br>        **v.**<br><br>**LATIMER, BIAGGI, RACHID &**<br>**GODREAU, LLP, et al.,**<br>    **Defendants.** | **Civil No. 04-2377 (ADC)** |

## OPINION AND ORDER

Plaintiff, Nilda Rivera-Cruz ("plaintiff"), filed this sexual harassment and retaliation action against defendants, Latimer, Biaggi, Rachid & Godreau, LLP and Fausto David Godreau-Zayas ("Godreau") (collectively "defendants"), on December 15, 2004. On November 9, 2006, plaintiff filed a motion in limine to exclude defendants' expert, Steven Moshlak ("Moshlak"). (**Docket No. 87**). On February 11, 2008, Chief Magistrate-Judge Justo Arenas ("Chief Magistrate-Judge") issued a comprehensive Report and Recommendation ("R & R") recommending that the Court grant said motion. (**Docket No. 128**). In so doing, the Chief Magistrate-Judge determined that defendants had not met their burden of showing that Moshlak's methodologies were reliable under Fed. R. Evid. 702, or would otherwise assist the jury to understand the evidence or determine a fact in issue. *Id.*

Now before the Court are defendants' objections to the R & R. (**Docket No. 129**). After reviewing the R & R and objections thereto, the Court **ADOPTS** the R & R, thereby granting plaintiff's motion in limine to exclude Moshlak as an expert witness.[1]

**I.    Standard of Review for Objections to a Report and Recommendation**

A district court may refer pending motions to a magistrate-judge for a report and recommendation. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); L. Civ. R. 72(a). Any party adversely affected by the recommendation issued may file written objections within ten (10)

---

[1]The R & R exhaustively sets forth the relevant and applicable facts underlying plaintiff's motion, accordingly, to the extent they are not challenged, the Court will adopt these and will not restate them here.

days of being served with the report and recommendation. 28 U.S.C. § 636(b)(1). A party that files a timely objection is entitled to a de novo determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made." *Sylva v. Culebra Dive Shop*, 389 F. Supp. 2d 189, 191-92 (D.P.R. 2005) (citing *United States v. Raddatz*, 447 U.S. 667, 673 (1980)). Failure to comply with this rule may preclude further review by the district court and the court of appeals. *See Santiago v. Cannon U.S.A. Inc.*, 138 F.3d 1, 4 (1st Cir. 1998); *Davet v. Maccorone*, 973 F.2d 22, 30-31 (1st Cir. 1992). Similarly, a party objecting to a report and recommendation is "not entitled to a de novo review of an argument never raised" before the magistrate-judge. *Borden v. Sec. of Health and Human Svcs.*, 836 F.2d 4, 6 (1st Cir. 1987).

In conducting its review, the Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate-judge." 28 U.S.C. § 636 (a)(b)(1); *see also Templeman v. Cris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985); *Alamo-Rodríguez v. Pfizer Pharm., Inc.*, 286 F. Supp. 2d 144, 146 (D.P.R. 2003). Hence, the Court may accept those parts of the report and recommendation to which the plaintiff does not object. *See Hernández-Mejías v. General Elec.*, 428 F. Supp. 2d 4, 6 (D.P.R. 2005) (citing *Lacedra v. Donald W. Wyatt Detention Facility*, 334 F. Supp. 2d 114, 125-26 (D.R.I. 2004)).

## II.     The *Daubert* Standard

The admissibility of expert testimony is analyzed under Rule 702 of the Federal Rules of Evidence, which provides:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Pursuant to *Daubert v. Merrell Dow Pharms., Inc.*, the district court must perform a gate-keeping function to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. 579, 597 (1993); *see also Kumho Tire Co.*

*v. Carmichael*, 526 U.S. 137, 147-49 (1999) (expressly extending *Daubert* to technical and other specialized expert testimony); *Beaudette v. Louisville Ladder, Inc.*, 462 F.3d 22, 25 (1st Cir. 2006). "Expert testimony must be reliable, such that 'the reasoning or methodology underlying the testimony is scientifically valid and . . . that reasoning or methodology properly can be applied to the facts in issue.'" *U.S. v. Vargas*, 471 F.3d 255, 261-62 (1st Cir. 2006) (*citing Daubert*, 509 U.S. at 592-93). Further, the proposed expert testimony must also be relevant "not only in the sense that all evidence must be relevant, but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue." *Id.* (*citing Ruíz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 80 (1st Cir.1998); *Daubert*, 509 U.S. at 591-92).

This inquiry is flexible, and affords courts wide latitude in assessing whether an expert's testimony will materially assist the jury. *Daubert,* 509 U.S. at 594. Proponents, however, do not have to demonstrate that the assessments of their experts are correct, only that their opinions are reliable. *Ruíz-Troche*, 161 F.3d at 85) ("*Daubert* neither requires nor empowers trial courts to determine which of several competing scientific theories has the best provenance.").

Although the "focus [of the court] must be solely on principles and methodology, not on the conclusions that they generate," *Daubert*, 509 U.S. at 595, "conclusions and methodology are not entirely distinct from one another." *General Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.* Notwithstanding, the gate-keeper role is not intended to supplant the adversary system or the role of the jury; rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Finally, the proponent of the evidence has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. *See Daubert*, 509 U.S. at 592 n. 10 ("These matters should be established by a preponderance of proof.") (*citing Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)); *see also* Fed. R. Evid. 702 Advisory Committee's Note ("[T]he admissibility of all expert testimony is governed by the principles of Rule 104(a). Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence.").

### III. Discussion

#### A. Defendants' Objections

Defendants' overarching objection to the R & R is that the Chief Magistrate-Judge failed to consider the record as a whole, permitted inadmissable evidence, and improperly weighed Moshlak's credibility. (**Docket No. 129**). Defendants further contend that, contrary to the Chief Magistrate-Judge's findings, Moshlak's application of the methodologies are reliable and relevant, and that the subject matter of his testimony is "appropriate for the rendering of an opinion because it will greatly assist the jury and the Court to understand the . . . evidence or to determine the facts . . . ." *Id.* at 2. In an effort to support this contention, defendants attack one (1) of the Chief Magistrate-Judge's factual statements and the five (5) reasons on which he relied in concluding that Moshlak failed to apply his methodology to the facts of this case with any reliability. *Id.* at 3-15. The Court briefly addresses each argument in turn.

#### B. Analysis

##### 1. Defendants' Position Regarding Moshlak's In-Court Computer Search

Defendants' first argument is two-pronged. First, they argue that the Chief Magistrate-Judge was incorrect in his belief that defendants agreed with plaintiff's request that Moshlak perform an in-Court review of a mirror image of the hard drive from Godreau's second computer (the "review"). In fact, defendants contend they strenuously objected to plaintiff's request that Moshlak perform said review. Notwithstanding, the truth of these

statements—defendants clearly objected to any such review—it is abundantly clear from a reading of the R & R that the Chief Magistrate-Judge in no way implied that defendants agreed with his decision to allow the review, only that both parties agreed that, to the extent a review was performed, Moshlak should be searching the mirror image of the hard drive of Godreau's second computer (as compared to the mirror image of the hard drive from Godreau's first computer, or the hard drive of Moshlak's own computer). (**Docket No. 128**, at 34-35). Accordingly, defendants' contentions, as to this point, are misplaced.

Second, defendants argue that the Chief Magistrate-Judge erred in allowing Moshlak to perform the review because it "did not go to the admissibility of Moshlak as an expert . . . ." (**Docket No. 129**, at 4). A thorough review of the record shows that this objection is unfounded. As is evident to this Court, the Chief Magistrate-Judge was clearly exploring the *reliability* of Moshlak's methodology—something he was required to do under *Daubert*—when he had Moshlak perform the review. As the *Daubert* Court made clear, district court's are allowed to test the reliability of the principles and methods used by experts in reaching their opinions, and that is exactly what was done here. *See, e.g.*, Fed. R. Evid. 702 (expert testimony must be "the product of reliable principles and methods," which the witness must have applied "reliably to the facts of the case"). Accordingly, this Court rejects the argument that by allowing Moshlak to perform the review, the Chief Magistrate-Judge was somehow testing the credibility of Moshlak as compared to the reliability of his methodology. *See, e.g.*, *Kumho*, 526 U.S. at 152 (concluding that the court has considerable leeway in deciding how to go about determining whether particular expert testimony is reliable).

### 2. Instruction Given by Counsel During Review; Inability to Open AVI File

Defendants' next objection takes umbrage with the Chief Magistrate-Judge's finding that Moshlak "dragged" his feet during the review, and his conclusion that by failing to open an AVI file, he demonstrated his inability to apply his methodology to the facts of the case. More specifically, defendants contend that: (1) contrary to the R & R, Moshlak was specifically asked to search the "C" drive on his own computer, instead of the "F" drive which contained

the mirror image of the hard drive from Godreau's second computer, and, therefore, was not dragging his feet when he did so; and (2) the Chief Magistrate-Judge should have given no weight to Moshlak's inability to open the AVI file during the review. Accordingly, defendants contend that neither of these reasons, or "incidents", warrant Moshlak's exclusion.

The first prong of this objection suffers from two flaws. First, as the Chief Magistrate-Judge correctly concluded, it is clear that Moshlak was to search the "F" drive, or the mirror image of the hard drive from Godreau's second computer, not the "C" drive from his own computer, for any possible pornographic files during the review. *See* Transcript of Hearing (Day 1 – 10/9/07) ("Trans. Day 1"), at 216 (prior to any questioning, and while discussing the pending review, counsel stated "[j]ust for the purpose of clarity, we're talking about the second computer"); *id.* at 218 (during the questioning, defendants' counsel stated "I just want to make sure, this is the hard drive of the second computer," to which plaintiff's attorney stated, "[s]econd computer I hope, that's what we asked for."). Moreover, any argument to the contrary is nonsensical, as it would serve no purpose for Moshlak to conduct a search of his own personal hard drive for pornographic images possessed by Godreau, when the only information that mattered was exclusively located in the hard drive of Godreau's second computer, or the "F" drive. Second, contrary to defendants' contention, this "incident" was not the basis for the recommendation by the Chief Magistrate-Judge to exclude Moshlak, rather, it was one piece of evidence supporting his conclusion that Moshlak was dragging his feet during the review.

The second prong of the objection is equally problematic. During the first day of the hearing—and after finally conducting the requested search on the "F" drive—Moshlak, with plaintiff counsel's assistance, was able to locate numerous AVI, or multimedia, files which included the file names Holly1, Katlyn1, Stacy1, and Monica1. *See* Trans. Day 1, at 223. When asked to open one of the AVI files, he was unable to do so because his firewall had "come up on" him. *Id.* at 226. From this, he concluded that there was nothing in the file. *Id.* at 226-28. When asked by plaintiff's counsel why he was unable to open the file when plaintiff's expert,

Marcus Lawson ("Lawson"), was able to open it, Moshlak testified that he had no idea how Lawson would be able to do that. *Id.* at 227-28. He further stated that: "What I could tell you is this, is based upon what we just observed, I couldn't see it and it validates what I said. I didn't see it." *Id.* at 228. The next day Moshlak testified that he did not know whether his firewall blocked AVI files when he originally searched the second hard drive because he recently upgraded his firewall. *See* Transcript of Hearing (Day 2 – 10/10/07) ("Trans. Day 2"), at 7. Notwithstanding, Moshlak reiterated that the files could not be opened because "there was nothing there." *Id.*

Accordingly, based upon Moshlak's initial inability to locate the AVI files, his inability to open an AVI file, and his ultimate conclusion that since the AVI file could not be opened on his computer it must not be pornographic, this Court concludes that the Chief Magistrate-Judge was correct in concluding that Moshlak is unable, or unwilling, to correctly apply his methodologies to the facts of this case. *See, e.g.*, Fed. R. Evid. 702 (requiring expert testimony to be the "product of reliable principles and methods"); *Joiner*, 522 U.S. at 146 (affirming exclusion of testimony where the methodology was called into question because an "analytical gap" existed "between the data and the opinion proffered").

### 3. Moshlak's Reliance on Counsel's Assertions Regarding Godreau's Email Account

Defendants next contend that the Chief Magistrate-Judge should have placed no weight on Moshlak's reliance on Godreau's counsel's assertions regarding Godreau's personal email account because (1) the testimony was misconstrued,[2] and (2) it went to Moshlak's credibility.[3]

---

[2] It bears noting that defendants make no effort to explain how said testimony was misconstrued.

[3] During the hearing, Moshlak testified that he did not know that the e-mail address latitude341@hotmail.com was associated with Godreau. *See* Trans. Day 1, at 206. Moshlak, however, later testified that he may or may not have seen the sworn statement and deposition testimony where Godreau testified that latitude341@hotmail.com belonged to him. *Compare id.* at 207 (stating he had seen sworn testimony), *with* Trans. Day 2, at 33-34 (stating that he had not seen sworn statement). When

(continued...)

Again, this Court disagrees.

Defendants seem to misconstrue the Chief Magistrate-Judge's reliance on Moshlak's willful blindness. As was made clear in the R & R, this information did not lead the Chief Magistrate-Judge to exclude Moshlak, but was one piece of evidence which called into question the due diligence he put forth in conducting his investigation. (**Docket No. 128**) ("Although Moshlak's willful blindness to this aspect of his investigations cannot lead to any direct conclusions as to his application of methodologies to facts, such blindness in this respect does nothing but bolster any doubts as to his due diligence in other aspects of his investigation."). Accordingly, the Court sees no problem with the Chief Magistrate-Judge's reference to Moshlak's apparent willful blindness to readily available facts.

Separately, this Court finds it extremely problematic that Moshlak blindly relied on information given to him by counsel, and failed to verify the information from reliable, independent sources. It is not the job of an expert to parrot the opinions of counsel, but to "bring to the jury more than the lawyers can offer in argument." *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992). Experts participate in cases because, ultimately, the trier of fact will be assisted by their opinions, not to act as an alter-ego of the attorney trying the case. *See Trigon Ins. Co. v. U.S.*, 204 F.R.D. 277, 295 (E.D.Va. 2001). Hence, " absent independence from the party or its advocates, a testifying expert lacks the credibility necessary to be of assistance to the trier of fact." *Id.* (*citing* Fed. R. Evid. 702). Thus, Moshlak's reliance on information provided to him by counsel, even in the face of conflicting evidence, and his failure to investigate or seek independent corroboration of conflicting theories, calls into questions his ability to assist the trier of the fact to understand the evidence or to determine a fact in issue.

---

(continued...)
questioned about this, Moshlak testified that he relied on Godreau's counsel's assertions when conducting his investigations, even though he was aware that Godreau later testified otherwise. *See* Trans. Day 2, at 39. Moshlak further testified that his conclusion that Godreau's computer had been "hijacked" was based on counsel's representations. *See id.* at 32.

### 4. Failure to Review "Suspicious" Files

Defendants next object to the Chief Magistrate-Judge's reliance on Moshlak's failure to review certain flies in concluding that Moshlak did not properly apply his methodologies to the facts of the case. Again, defendants contend that by making this assessment, the Chief Magistrate-Judge improperly weighed Moshlak's credibility rather than his reliability. The Court does not agree.

As the R & R makes clear—and this Court agrees—Moshlak's failure to investigate files with names like "Candy, Monica [or] Fauna" shows that he did not apply his principles and methods reliably to the facts of the case. *See* Fed. R. Evid. 702 (expert testimony permitted if "the [expert] witness has applied the principles and methods reliably to the facts of the case."); *see also* Stephen A. Saltzburg et al., 3 *Federal Rules of Evidence Manual* § 702.02[10] (8th Ed. 2002) (explaining that "'[t] he amendment [to Fed. R. Evid. 702] makes clear that reliable *application* of a method is every bit as important as whether the method is itself reliable.'"). The fact of the matter is that Moshlak concluded that no pornography existed in the "my music" folder of the mirror image of the hard drive from Godreau's second computer. However, when pressed, it became clear that he failed to look through the contents of the files contained therein before making said conclusion. Moshlak's sole purpose in this case was to determine if Godreau's hard drives contained pornographic materials, and, to a lesser extent, if they did, how they got there. Consequently, as the R & R explained, Moshlak should have been reviewing all suspect files, including those with women's names.[4] Accordingly, based on the foregoing, the Court agrees with the R & R's conclusion that Moshlak simply did not apply the methodologies to the facts of this case with any reliability.

### 5. Contradictory Testimony

Defendants further object to the Chief Magistrate-Judge's reliance on Moshlak's contradictory statements, regarding searches he allegedly performed, in recommending that

---

[4] The Court recognizes, as did the Chief Magistrate-Judge, that not all files containing names, whether male of female, are pornographic in nature.

Moshlak be excluded. Defendants contend that this was an improper credibility assessment under *Daubert*. This Court does not agree.

If the Chief Magistrate-Judge had relied solely on Moshlak's inconsistent statements in recommending that he be excluded—*e.g.*, Moshlak made inconsistent statements and therefore must be excluded—this Court would agree with defendants. For even though Moshlak contradicted himself on a number of occasions, inconsistencies in testimony go to the weight of the experts testimony, not to its admissibility, and are not a basis for excluding an expert. *See, e.g.*, *McIntosh v. Monsanto Co.*, 462 F. Supp. 2d 1025, 1033 (E.D.Mo. 2006). However, a review of the R & R shows that the Chief Magistrate-Judge was not weighing Moshlak's credibility by looking at his inconsistent testimony, but was more appropriately pointing out the flaws in his application of the methodology. The fact is that Moshlak does recall whether or not he searched the unallocated areas of Godreau's hard drives—even after receiving Lawson's report which clearly indicates that those areas contained pornographic material. Notwithstanding, Moshlak's felt comfortable issuing two separate reports stating that no pornography existed, without knowing for sure whether he actually searched the entirety of Godreau's hard drives. Accordingly, this Court finds that the Chief Magistrate-Judge appropriately considered Moshlak's inconsistent testimony in determining that his application of the methodology was flawed.

### 6.     Moshlak's Inability to Support his Opinions

Finally, defendants object to the Chief Magistrate-Judge's conclusion that Moshlak's opinion was based on "conjecture or speculation" because he testified to information that was unsupported by fact.[5] More specifically, they argue that even if an opinion is unreliable, it does not necessarily mean that the witness who rendered that opinion is unqualified to testify as an expert. Again, the Court disagrees with defendants' contention.

As the Chief Magistrate-Judge explained, the entire theme of Moshlak's first two

---

[5]Defendants set forth no facts to contradict the Chief Magistrate-Judge's assessment that Moshlak's opinion was unsupported. (**Docket No. 129**, at 11-12).

reports was that there was no pornography on the hard drives,[6] and that, to the extent there was, it was attributable solely to GATOR[7] . The problem with the latter portion of Moshlak's opinion is that there is no direct evidence to support it.  In fact, according to Moshlak's own testimony, he has no evidence that: (1) Godreau's information was sold by GATOR to third parties; (2) Godreau had received unsolicited commercial emails; or (3) that Godreau's information was on the Gain Network.  *See* Trans. Day 2, at 26-28.  Further, Moshlak testified that GATOR could not subscribe an individual to pornographic web sites.  *See* Trans. Day 1, at 184.  Notwithstanding, he felt comfortable opining that Godreau's computer had been "highjacked," and that GATOR was responsible for any possible pornography on the two hard drives.[8]  *See* Trans. Day 2, at 26-28.  Further, when asked to explain how he reached this conclusion, he explained that this opinion was based on his interview with defendants' counsel, and her erroneous statements regarding Godreau's personal email.  *Id.* at 32.

As the First Circuit has previously explained, "[i]t is fundamental that '[e]xpert testimony must be predicated on facts legally sufficient to provide a basis for the expert's opinion.'  Thus, 'an expert should not be permitted to give an opinion that is based on conjecture or speculation from an insufficient evidentiary foundation.'" *Damon v. Sun Company Inc.*, 87 F.3d 1467, 1474 (1st Cir. 1996) (*internal citations omitted*).  Further, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion

---

[6] Defendants set forth no facts to contradict the Chief Magistrate-Judge's assessment that Moshlak's opinion was unsupported. (**Docket No. 129**, at 11-12).

[7] According to Moshlak, GATOR is a software program or application that is supposed to provide functionality by storing passwords, e-mail addresses and credit card information, and then utilizing an auto-fill function when that information is necessary. (**Docket No. 87-6**, at 4).  Moshlak stated that GATOR can be installed on a computer without a user's knowledge; Moshlak reported this is known as "drive-by downloads." *Id*. However, according to Moshlak, GATOR may be "hacked" with a program known as "Office Companion", which tracks web. sites visited by users and sell this information to advertisers, who target users with pop-up advertisements. *Id.* at 5.

[8] For example, once Moshlak found remnants of GATOR on the hard drive of Godreau's second computer, he immediately ceased his search, and concluded that the presence of GATOR would explain any pornography which might have been on the second hard drive.  *See* Trans. Day 1, at 131.

evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Joiner*, 522 U.S. at 519. Here, as shown in the R & R, Moshlak's expert testimony is not based on sufficient facts and/or data, and, therefore, must be excluded. *See Irvine v. Murad Research Labs.*, 194 F.3d 313, 321 (1st. Cir. 1999) ("Absent adequate factual data to support the expert's conclusions his testimony was unreliable.").

## V.     Conclusion

After carefully reviewing the record and considering defendants' objections, the Court hereby **ADOPTS** the R & R. (**Docket No. 128**). Accordingly, plaintiff's motion in limine to exclude defendants' expert (**Docket No. 87)** is **GRANTED**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 16th day of June, 2008.

**S/AIDA M. DELGADO-COLON**
**United States District Judge**